**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kenneth F. WILLIAMS, a.k.a. Mobile,
Defendant–Appellant.**

**No. 14–14086
Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 26, 2016.

Tiffany H. Eggers, Lennard B. Register, III, Robert G. Davies, U.S. Attorney's Office, Pensacola, FL, Stephen M. Kunz, Assistant U.S. Attorney, U.S. Attorney's Office, Tallahassee, FL, Pamela C. Marsh, U.S. Attorney's Office, Panama City, FL, for Plaintiff–Appellee.

Noel Gifford Lawrence, Law Office of Noel G. Lawrence, Jacksonville, FL, for Defendant–Appellant.

Kenneth F. Williams Coleman, FL, pro se.

Before WILLIAM PRYOR, ROSENBAUM, and FAY, Circuit Judges.

PER CURIAM:

After a jury trial, Kenneth Williams was convicted of two counts of distributing crack cocaine and one count of possessing with intent to distribute crack cocaine, all in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). He appeals his convictions and total sentence on various grounds. After careful review, we affirm.

## I.

Williams first argues that insufficient evidence supported his convictions. He contends that the government's case relied almost entirely on circumstantial evidence from an unreliable witness whose testimony was unworthy of belief.

Generally, we review *de novo* whether sufficient evidence supports a jury's verdict in a criminal trial.[1] *United States v. Howard,* 742 F.3d 1334, 1341 (11th Cir. 2014). We view the evidence presented at trial, and draw all reasonable inferences therefrom, in the light most favorable to the government. *United States v. Hansen,* 262 F.3d 1217, 1236 (11th Cir.2001). We will not disturb a guilty verdict unless no reasonable trier of fact could have found that the evidence establishes the defendant's guilt. *Howard,* 742 F.3d at 1341; *United States v. Rodriguez,* 218 F.3d 1243, 1244 (11th Cir.2000).

"The jury gets to make any credibility choices, and we will assume that they made them all in the way that supports the verdict." *United States v. Thompson,* 473

F.3d 1137, 1142 (11th Cir.2006). We will not revisit the question of witness credibility unless the testimony is incredible as a matter of law. *United States v. Feliciano,* 761 F.3d 1202, 1206 (11th Cir.) *cert. denied,* —— U.S. ——, 135 S.Ct. 735, 190 L.Ed.2d 459 (2014). For testimony to be considered incredible, it must be unbelievable on its face, such as testimony as to facts that the witness physically could not have observed or events contrary to the laws of nature. *Id.*

■ All of Williams's convictions fall under 21 U.S.C. § 841(a)(1).[2] To sustain a conviction for distribution of crack cocaine, the government must show that the defendant knowingly or intentionally distributed or dispensed cocaine base. 21 U.S.C. § 841(a)(1). To sustain a conviction for possession with intent to distribute crack cocaine, the government must demonstrate that the defendant knowingly possessed the controlled substance with the intent to distribute it. *See United States v. Hernandez,* 433 F.3d 1328, 1333 (11th Cir. 2005). Intent to distribute can be inferred from the amount of cocaine base involved. *See id.*

■ Here, viewing the trial evidence in the light most favorable to the government, sufficient evidence supports Williams's convictions for distributing crack cocaine and possessing with intent to distribute crack cocaine. The jury heard evidence that a confidential source, Ked-

---

1. Williams arguably did not preserve his sufficiency challenge by presenting the argument he raises on appeal to the district court in support of his motion for judgment of acquittal. In any case, Williams's challenge fails even under the more rigorous *de novo* standard.

2. In the section of his brief challenging the sufficiency of the evidence, Williams asserts that the district court failed to instruct the

jury on the term "willfully." Even assuming that Williams's passing comment was sufficient to raise the issue for review, the district court did not so err because "[t]he language of [§ 841(a)(1)] does not refer, in any way, to willfulness, and as a consequence, we have said that the government only needs to prove that the defendant acted knowingly." *United States v. Tobin,* 676 F.3d 1264, 1281 (11th Cir.2012).

rick Odom (occasionally "Odum" in the record), purchased crack cocaine from Williams on two occasions, in October 2012 and January 2013, as part of controlled buys organized by the Drug Enforcement Administration ("DEA") and state and local law-enforcement agencies. Odom testified that, on both occasions, he called Williams to set up the purchases, met Williams at a designated location (Williams's residence and a gas station), and then purchased from Williams around $400 worth of crack cocaine, which he then gave to the DEA. Odom was searched by agents before and after the controlled buys, and the phone calls and transactions were monitored by DEA agents. One of the DEA agents accompanied Odom to the controlled buys and personally witnessed Odom meeting with Williams and, shortly thereafter, returning with the crack cocaine. Odom also testified that he had purchased $100 to $400 worth of crack cocaine from Williams on approximately forty to fifty prior occasions.

Nothing about Odom's testimony—based on personal knowledge and largely corroborated by DEA agents—was incredible as a matter of law. Moreover, the jury heard the negative information about Odom that Williams cites on appeal, such as Odom's personal drug dealing while working with another law-enforcement agency and the fact that Odom's help on Williams's case benefitted Odom both legally and financially. Despite these facts, the jury apparently found his testimony to be credible. We defer to the jury's credibility determination. *See Feliciano*, 761 F.3d at 1206; *Thompson*, 473 F.3d at 1142.

The jury also heard testimony regarding the execution of a search warrant at Williams's residence in February 2013. While executing the search warrant on Williams's home, officers found 5.7 grams of crack cocaine in the house, as well as $4,000 in a safe that, according to one of the DEA agents, smelled of cocaine. Williams admitted to an agent that both the safe and the money were his. The jury also heard from Brian Lammers, a DEA agent involved in the search of Williams's residence, who testified that Williams stated during the search that he had not been employed since 2005. Lammers also testified that there were three vehicles at the residence at the time of the search, two of which had been used by Williams during the controlled buys.

In light of evidence regarding the two controlled buys, William's prior dealings with Odom, the $4,000 cash in the safe, the crack cocaine found at Williams's residence, and William's lack of employment and unexplained wealth, a reasonable jury could have concluded that Williams knowingly distributed crack cocaine and knowingly possessed with the intent to distribute crack cocaine. *See* 21 U.S.C. § 841(a)(1); *Hernandez*, 433 F.3d at 1333. Because sufficient evidence supports his convictions, the district court did not err in denying Williams's motion for judgment of acquittal.

## II.

Williams next argues that the district court abused its discretion in admitting evidence of the following: (1) his lack of employment coupled with unexplained wealth; and (2) a 2001 Florida judgment of conviction for possession of cocaine and sale of cocaine.

We review a district court's evidentiary rulings for an abuse of discretion. *United States v. House*, 684 F.3d 1173, 1197 (11th Cir.2012). Evidentiary errors are subject to review for harmlessness. *Id.* A non-constitutional evidentiary error does not warrant reversal unless there is a reasonable likelihood that the error affected the defendant's substantial rights. *Id.; Unit-*

ed States v. Hands, 184 F.3d 1322, 1329 (11th Cir.1999). "That is, we will not reverse a defendant's conviction on the basis of an evidentiary error that does not implicate his constitutional rights if the error had no substantial influence, and enough evidence supports the result apart from the phase affected by error." House, 684 F.3d at 1197.

## A. Wealth Evidence

Williams argues that evidence of his lack of employment history and wealth should have been excluded as both unfairly prejudicial under Rule 403 and beyond the scope of lay testimony from the agent.

District courts have broad discretion to admit wealth evidence so long as it aids in proving or disproving a fact in issue. United States v. Bradley, 644 F.3d 1213, 1272 (11th Cir.2011). Evidence of a defendant's unexplained wealth can be probative of a defendant's involvement in drug trafficking, provided it is accompanied by a showing that the defendant lacked legitimate sources of income. United States v. Terzado–Madruga, 897 F.2d 1099, 1120 (11th Cir.1990).

Under Federal Rule of Evidence 403, the trial court may exclude relevant evidence if its probative value is substantially outweighed by a danger of, among other things, unfair prejudice, confusing the issues, or misleading the jury. Fed.R.Evid. 403. Under Rule 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed.R.Evid. 602. A witness's lay opinion is admissible if it is "rationally based on the witness's perception." Fed.R.Evid. 701.

■ Here, the district court did not abuse its discretion in admitting evidence of Williams's lack of employment coupled with his unexplained wealth. The fact that Williams had not been employed since 2005, in light of Williams's distribution and possession of crack cocaine, tends to suggest that Williams's wealth was derived from dealing crack cocaine. See Terzado–Madruga, 897 F.2d at 1120. Williams asserts that his lack of employment history "comes too close to revealing [his] prior incarceration history," because in order to rebut the testimony, he would have had to reveal his criminal history. But revealing Williams's incarceration history would not rebut the government's evidence, because it does not show that Williams's wealth was legitimately derived. Overall, Williams has not shown that the danger of unfair prejudice substantially outweighed the probative value of this evidence. See Fed.R.Evid. 403.

■ In addition, the district court did not err in allowing the agent to testify as to observations made and information obtained during the search of Williams's residence. The agent did not testify as an expert or to matters beyond his personal knowledge. Accordingly, the evidence of Williams's unexplained wealth was properly admitted. See Fed.R.Evid. 602, 701; see also Terzado–Madruga, 897 F.2d at 1120.

## B. Rule 404(b) Evidence

Williams contends that his 2001 Florida conviction for possession and sale should have been excluded for three reasons. First, he argues, it was based on a plea of nolo contendere, and Rule 410, Fed. R.Evid., precludes its admission. Second, he contends, it was too remote in time to be used at trial. And third, he argues, it should have been excluded under Rule 403, Fed.R.Evid., because its probative value

was substantially outweighed by unfair prejudice.

Federal Rule of Evidence 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with that character, but such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *United States v. Eckhardt*, 466 F.3d 938, 946 (11th Cir.2006). "Rule 404(b) is one of inclusion which allows extrinsic evidence unless it tends to prove only criminal propensity." *United States v. Sanders*, 668 F.3d 1298, 1314 (11th Cir. 2012) (internal quotation marks omitted). Generally, evidence is admissible under Rule 404(b) if it meets three requirements: "(1) it is relevant to an issue other than the defendant's character; (2) the prior act is proved sufficiently to permit a jury determination the defendant committed the act; and (3) the evidence's probative value cannot be substantially outweighed by its undue prejudice, and it must satisfy Federal Rule of Evidence 403." *Eckhardt*, 466 F.3d at 946.

Whether a conviction based on a *nolo contendere* plea can be introduced as proof of a defendant's knowledge or intent under Rule 404(b) does not appear to have been directly resolved by this Court. *Cf. United States v. Wyatt*, 762 F.2d 908, 911 (11th Cir.1985) (holding that facts underlying a defendant's plea of *nolo contendere* may be admissible under Rule 404(b) even if the plea is not). But, in this case, we need not decide whether, as a general matter, a conviction based upon a plea of *nolo contendere* is admissible under Rule 404(b) as substantive proof of a defendant's intent.

■ Evidentiary errors are subject to review for harmlessness, and we conclude that the error was harmless under the circumstances. *See Hands*, 184 F.3d at 1329. We cannot say that the 2001 judgment of conviction for possession and sale of cocaine had a "substantial influence" on the jury's verdict. *See id.* As recounted above, the government presented ample evidence, untainted by error, showing that Williams knowingly sold crack cocaine to Odom on two occasions, possessed crack cocaine at his home along with $4,000 in a safe that smelled of cocaine, and had not been employed since 2005. The 2001 conviction showed that Williams had sold and possessed cocaine in the past, two actions demonstrated far more persuasively by the evidence presented at trial. Viewed in its totality, the evidence of Williams's guilt was overwhelming, and there is no reason to think that the 2001 conviction had anything other than, at most, a marginal influence on the jury.

### III.

Williams also challenges the procedural and substantive reasonableness of his sentence. He argues that the district court committed procedural error at sentencing when determining the drug quantity for which he was responsible. Further, Williams contends that the sentence imposed by the district court was not substantively reasonable.

We review the reasonableness of a sentence under a deferential abuse-of-discretion standard of review. *Gall v. United States*, 552 U.S. 38, 41, 128 S.Ct. 586, 591, 169 L.Ed.2d 445 (2007). We employ a two-step process in reviewing the reasonableness of a sentence. *United States v. Pugh*, 515 F.3d 1179, 1190 (11th Cir.2008). We look "first at whether the district court committed any significant procedural error and then at whether the sentence is substantively reasonable under the totality of the circumstances." *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir.2010).

## A.

A district court procedurally errs by improperly calculating the guideline range, among other things. *United States v. Almedina,* 686 F.3d 1312, 1315 (11th Cir. 2012). We review a district court's underlying determination of the drug quantity attributable to a defendant for clear error. *Id.*

To calculate a base offense level for drug distribution, the district court must determine the quantity of drugs properly attributable to the defendant. *United States v. Frazier,* 89 F.3d 1501, 1506 (11th Cir. 1996). "When the drug amount that is seized does not reflect the scale of the offense, the district court must approximate the drug quantity." *Almedina,* 686 F.3d at 1315–16. In estimating the quantity, the sentencing court may rely on evidence demonstrating the average frequency and amount of a defendant's drug sales over a given period. *Id.* at 1316. "This determination may be based on fair, accurate, and conservative estimates of the drug quantity attributable to a defendant, [but it] cannot be based on calculations of drug quantities that are merely speculative." *Id.* (internal quotation marks omitted). The government must establish drug quantity by a preponderance of the evidence. *Id.* at 1315.

█ The district court's drug-quantity finding was not clearly erroneous. The court heard testimony at sentencing regarding the amounts of crack cocaine Odom previously purchased from Williams, as well as the crack cocaine seized from Williams's residence. The court applied a conservative estimate of drug quantity based on this testimony, using the low end of the ranges in Odom's testimony, yielding a total of 92.2 grams of cocaine base. The court was entitled to find, based on that testimony, that the drug amount was proven by a preponderance of the evi-

dence. *See id.* at 1315–16; *Frazier,* 89 F.3d at 1506. Williams is correct to the extent that, when a defendant is being held accountable for the acts of others as part of his relevant conduct (as in a conspiracy case), the district court must make an individualized finding of the drug quantity attributable to each individual defendant. *See United States v. Reeves,* 742 F.3d 487, 506–07 (11th Cir.2014). Here, however, Williams was held accountable for only his own conduct, so the drug-quantity finding is an individualized finding.

█ In any case, even if the district court erred in calculating drug quantity, the error had no effect on Williams's guideline range because the district court found that he qualified as a career offender for guidelines purpose. *See United States v. Foley,* 508 F.3d 627, 634 (11th Cir.2007) (holding that errors are harmless if they do not substantially affect the sentence imposed). As a result, the career-offender guideline, § 4B1.1, rather than drug quantity, § 2D1.1, determined his offense level and guideline sentencing range. U.S.S.G. § 4B1.1(b); *see United States v. Lawson,* 686 F.3d 1317, 1319 (11th Cir. 2012).

Williams does not argue that he was improperly sentenced as a career offender. Rather, he contends that the career-offender guideline is overly harsh, fails to distinguish between the severity of predicate offenses, and has a disparate impact on African–Americans. Because Williams does not contend that the career-offender guideline was erroneously applied, and because the court is required to apply the guidelines in effect at the time of his sentencing, U.S.S.G. § 1B1.11, we will consider these policy arguments in addressing the substantive reasonableness of his sentence.

## B.

Williams contends that his total sentence of 294 months in prison is overly harsh. He asserts that a sentence of 120 months would have been sufficient but not greater than necessary to comply with the sentencing factors in 18 U.S.C. § 3553(a).

We examine "whether the sentence is substantively reasonable under the totality of the circumstances." *Tome*, 611 F.3d at 1378. The party challenging the sentence bears the burden of showing it is unreasonable in light of the record and the § 3553(a) factors. *Id.*

The district court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" set forth in 18 U.S.C. § 3553(a)(2). 18 U.S.C. § 3553(a). These purposes include the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes. *Id.* The sentencing court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims of the offense. *Id.* § 3553(a)(1), (3)-(7). The weight given to any of these factors is in the sound discretion of the district court. *United States v. Clay*, 483 F.3d 739, 743 (11th Cir.2007). "[B]ut we will remand for resentencing if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id.* (internal quotation marks omitted).

With the career-offender enhancement, Williams's guideline range was 262 to 327 months of imprisonment. Without it, Williams's guideline range would have been 120 to 150 months based on the court's determination of drug quantity. The maximum term of imprisonment he faced as to each count was 360 months. The district court imposed a total sentence of 294 months, stating that Williams was a career offender with no aggravating or mitigating factors.

Williams has not shown that his sentence is substantively unreasonable in light of the facts and the § 3553(a) factors. We ordinarily expect a sentence within the guideline range to be reasonable. *United States v. Asante*, 782 F.3d 639, 648 (11th Cir.2015). While the district court may have been permitted to vary downward from the career-offender enhanced guideline range based on a policy disagreement with the career-offender guideline, or based on the specific facts of Williams's case and the § 3553(a) factors, Williams has not shown that the district court abused its discretion in not varying downward. Williams's presentence investigation report reflects an extensive and repetitive criminal history, even if the offenses were relatively minor. Numerous terms of incarceration and other legal sanctions failed to deter him from drug dealing and committing other violations of the law. In light of Williams's history and characteristics, his career-offender designation, and the facts of the instant offense, we cannot conclude that the district court made a clear error of judgment in weighing the § 3553(a) factors and sentencing Williams near the mid-point of his guideline range. *See Clay*, 483 F.3d at 743.

Accordingly, we affirm.

**AFFIRMED.**

